## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **ADRIAN McPHERSON,** | ) | |
| | ) | **Case No. 3:07-cv-0002** |
| **Plaintiff,** | ) | |
| | ) | **Judge Haynes** |
| **vs.** | ) | **Magistrate Judge Griffin** |
| | ) | |
| **TENNESSEE FOOTBALL, INC.,** | ) | |
| **d/b/a TENNESSEE TITANS,** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFF'S MOTION TO REMAND

### I. Introduction

On January 3, 2007, Defendant Tennessee Football, Inc. d/b/a The Tennessee Titans ("the Titans") removed the Complaint filed by Plaintiff Adrian McPherson ("McPherson") from the Davidson County Circuit Court to this Court. See Docket Entry No. 1. It did so pursuant to 28 U.S.C. §§ 1441 and 1446 because Plaintiff's tort claim is completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. §§ 141 et seq. The resolution of McPherson's claim for physical injuries against the Titans is substantially dependent upon an interpretation of, and is inextricably intertwined with the collective bargaining agreement to which McPherson and the Titans are parties. Federal jurisdiction exists here, the Motion to Remand should be denied and the lawsuit dismissed.[1]

---

[1]  The Titans filed a Motion to Dismiss contemporaneously with this Response.

1320879.1

## II. **Procedural Background**

On December 15, 2006, McPherson filed suit against the Titans in the Circuit Court for Davidson County, Tennessee.  <u>See</u> Docket Entry No. 1 at Ex. A. McPherson, a professional football player previously employed by the New Orleans Saints ("the Saints") of the National Football League ("NFL"), avers that he was injured during a football game between the Saints and the Titans.  <u>See</u> Docket Entry No. 1 at Ex. A at ¶¶ 4, 5, 7.  Claiming the Titans negligently supervised its employee mascot who injured him, McPherson seeks his lost income, compensatory and punitive damages.  <u>Id.</u>

The Titans timely removed the Complaint to this Court on January 3, 2007,[2] because McPherson's tort claim was completely preempted by Section 301 of the LMRA,[3] thus providing the Court with subject matter jurisdiction.  <u>See</u> Docket Entry No. 1 at ¶ 6.  McPherson's invocation of the judicial system's traditional tort remedies ignores the no fault injury compensation provisions and dispute resolution processes of the CBA for which McPherson's union collectively bargained and to which McPherson and the Titans agreed to be bound.

---

[2] McPherson did not serve the Titans with a copy of the Complaint and summons until January 11, 2007.  The Titans obtained a copy of the lawsuit from PACER.

[3] Section 301 provides in relevant part as follows:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

28 U.S.C. § 185(a).

1320879.1

On January 29, 2007, McPherson filed a pleading styled "Plaintiff's Response to Defendant's Notice of Removal Alternatively Plaintiff's Motion to Remand." Docket Entry No. 7. Relying solely upon an opinion of the Southern District of New York, Brown v. National Football League, 219 F. Supp. 2d 372 (S.D.N.Y. 2002), and ignoring the multiple cases finding complete preemption of a professional football player's claim against an NFL team, McPherson contends that his cause of action "does not require interpretation of the CBA and only implicates the ordinary concepts of negligence and the improper conduct of the Tennessee Titans mascot." Docket Entry No. 7 at ¶ 10. McPherson's arguments are contrary to the law of the United States Supreme Court and the Sixth Circuit Court of Appeals, ignore the critical factual and legal differences between the instant case and Brown v. NFL and must be rejected as a matter of law.

## III.  Factual Background

McPherson was employed by the Saints as a professional football player during the 2005 NFL Season and a portion of the 2006 NFL Season. Docket Entry No. 1 at Ex. A at ¶ 5. As a player/employee of the Saints, McPherson was a member of the National Football League Players Association ("the NFLPA"), as are all other player/employees in the NFL. Affidavit of Steve Underwood ("Underwood Affidavit") at ¶ 2; Affidavit of Mickey Loomis ("Loomis Affidavit") at ¶ 2. As the sole and exclusive bargaining representative of such players, and on their behalf, the NFLPA entered into a collective bargaining agreement ("CBA") with the National Football League Management Council ("NFLMC"), the sole and exclusive

1320879.1

bargaining representative of members clubs of the NFL, which includes among its members both the Titans and the Saints. Underwood Affidavit at ¶ 3 and Ex. 1 at 3. NFL players and NFL teams are bound by the terms and conditions of the CBA, including the grievance procedure and arbitration process described therein regarding injuries incurred in the course and scope of employment. Id. at 22-32.

As a player/employee of the Saints, McPherson participated in the August 12, 2006 preseason football game between the Saints and the Titans. See Docket Entry No. 1 at Ex. A at ¶ 7. While McPherson was getting ready for the second half by retrieving punts from the Saints punter, he ran into a golf cart being driven by T-Rac, the Titans' mascot. Underwood Affidavit at ¶ 4. According to statements provided by McPherson to the press, he suffered only knee bruises as a result of his collision, see id. at ¶ 5 and Ex. 4, just as if he had run into a goal post or been tackled by an opposing player. As a result, McPherson was placed on the Saints' Injured Reserve list and continued to receive his full pay – more than Sixty Thousand Dollars – while he recuperated. Loomis Affidavit at ¶ 5.

In October of 2006, the Saints determined that McPherson was no longer suffering from the injuries that he received in the Saints – Titans football game. Id. at ¶ 4. Thereafter, the Saints placed McPherson on waivers and his NFL Player Contract with the Saints was terminated on October 11, 2006. Id. McPherson did not file a grievance against either the Saints or the Titans regarding his injuries during the Saints – Titans game or the separation of his employment. Id. at ¶ 6; Underwood Affidavit at ¶ 8.

1320879.1

According to NFL records, after McPherson was released from employment by the Saints, he participated in a football tryout with the New York Giants on October 30, 2006 and with the Kansas City Chiefs on December 19, 2006. Underwood Affidavit at ¶ 6. McPherson is currently under contract with the Austin Wranglers of the Arena Football League. Id. at ¶ 7.

## IV. <u>Legal Analysis</u>

To determine whether removal is proper, the Court must "ascertain the substantive underpinnings of the plaintiff's claim." 14 Moore's Fed. Prac. § 81.04[1] at 81-11 (Mathew Bender 3d ed.). "The courts are cognizant of the fact that a plaintiff may seek to hide a federal claim in the complaint by using carefully drafted language. Therefore, the court will look beyond the language of the complaint to determine the appropriateness of removal." Id. If removal is proper, the Court must deny a motion to remand as a matter of law.

### A. PREEMPTION OF STATE LAW CLAIMS

Complaints originally filed in state court may be removed to federal court only if the case could have been filed, in the first instance, in federal court. See 28 U.S.C. § 1441(a). Federal jurisdiction typically exists where a federal question is presented on the face of a complaint. <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987). However, as the Court well knows, the "complete preemption" doctrine is an exception to the "well pleaded complaint rule." <u>Beneficial Nat. Bank v. Anderson</u>, 539 U.S. 1, 8 (2003). The theory behind the doctrine is that "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state

common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" <u>Caterpillar</u>, 482 U.S. at 393 (quoting <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987)).   That is the exact result dictated here.

The Sixth Circuit Court of Appeals recognizes that Section 301 of the LMRA has an unusually powerful preemptive force over a claim for relief sought exclusively under state law.  <u>See</u> <u>Alongi v. Ford Motor Co.</u>, 386 F.3d 716, 723-24 (6th Cir. 2004).   It is well established that Section 301 completely preempts state law claims, including tort law claims, that involve the interpretation of a collective bargaining agreement.  <u>United Steelworkers of Am. v. Rawson</u>, 495 U.S. 362, 368-69 (1990).   This must be so, for "if the policies that animate § 301 are to be given their proper range, … the preemptive effect of § 301 must extend beyond suits alleging contract violations.   These policies require that 'the relationships created by [a collective-bargaining] agreement' be defined by application of 'an evolving federal common law grounded in national labor policy.'"  <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 210-11 (1985) (brackets in internal quote in original) (quoting <u>Bowen v. United States Postal Serv.</u>, 459 U.S. 212, 225 (1983)).

Section 301 preemption jurisprudence is familiar.   "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law."  <u>Allis-Chalmers</u>, 471 U.S. at 220.   In <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, the United States Supreme Court noted that "[i]f the resolution of a state-law claim

1320879.1

depends upon the meaning of a collective bargaining agreement, the application of state law … is preempted and federal labor-law principles – necessarily uniform throughout the Nation – must be employed to resolve the dispute."  486 U.S. 399, 406-07 (1988).

"Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim and therefore arises under federal law."  Caterpillar, 482 U.S. at 393. Thus, state law claims preempted by Section 301 are properly removable to federal court, despite a plaintiff's failure to explicitly plead a federal cause of action.  See Lingle, 486 U.S. at 406 n.5.

In this Circuit, the Supreme Court's Section 301 preemption precedent of Allis-Chalmers and Lingle has evolved into a two part test:

> First, courts must determine whether resolving the state-law claims would require interpretation of the terms of the collective bargaining agreement.  If so, the claim is preempted.  Second, courts must ascertain whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or instead by state law. … If the rights were created by the collective bargaining agreement, the claim is preempted.  In short, if a state-law claim fails either of these two requirements, it is preempted by § 301.

Mattis v. Massman, 355 F.3d 902, 906 (6th Cir. 2004) (emphasis in original). McPherson's tort claim fails both.

## B. MCPHERSON'S STATE LAW CLAIM IS PREEMPTED BY SECTION 301.

McPherson's negligence claim is preempted by Section 301 of the LMRA because it cannot be resolved without interpreting and applying the CBA. Indeed, federal courts that have considered the precise issue raised by McPherson – whether an NFL player can recover in tort from an NFL team for injuries incurred in the course and scope of his professional duties in the NFL – uniformly have ruled that such disputes require the interpretation and application of the CBA and thus must be resolved pursuant to the grievance process and arbitration provisions to which the parties to the CBA agreed. See, e.g., Smith v. Houston Oilers, Inc., 87 F.3d 717, 720-721 (5th Cir. 1996) (dismissing state law claims of coercion, duress, extortion, battery, intentional infliction of emotional distress arising out of NFL players' purported injuries from their participation in rehabilitation program by NFL team because claims were preempted by Section 301); Sherwin v. Indianapolis Colts, Inc., 752 F. Supp. 1172, 1178 (N.D.N.Y. 1990) (dismissing state law claims for negligence, medical malpractice, fraud, negligent misrepresentation and negligent infliction of emotional distress arising out of NFL player's purported injuries and treatment thereof by NFL team doctors because claims were preempted by Section 301); Rudnay v. Kansas City Chiefs Football Club, 1983 U.S. Dist. LEXIS 12595, *6-7 (W.D. Mo. Oct. 19, 1983) (dismissing state law claim for breach of contract and tortuous interference with contract arising out of NFL player's purported injuries against NFL team because claims were preempted by Section 301) (copy attached). McPherson's claim – and legal result thereof – is no different here.

Federal courts must apply Section 301 preemption broadly to "ensure uniform interpretation of collective bargaining agreements." <u>Lingle</u>, 486 U.S at 404. In <u>Allis-Chalmers</u>, the Supreme Court explained that Section 301 is not merely a jurisdictional provision, but is a "congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." 471 U.S. at 209. Thus, any state law tort claim by an employee that is "inextricably intertwined with consideration of the terms of [a] labor contract" – including matters that may be fairly "implied" from the labor agreement – is completely preempted by Section 301. <u>Id.</u> at 213, 215. If federal law did not preempt all such claims, whether expressly or impliedly arising out of the parties' labor agreement, then McPherson could easily evade the preemptive force of Section 301 simply by relabeling his claim as sounding in tort and thus avoid the parties' agreement to have an arbitrator interpret the parties' obligations. <u>Id.</u> at 211, 219.

Viewed against the applicable standards, McPherson's state law tort claim is preempted clearly by Section 301.

> **1. The Remedy of Damages Sought by McPherson is Contrary to the Remedy For Football Related Injuries Agreed Upon by the Parties in the CBA.**

The CBA provides that a player's remedy for football related injuries that are serious enough to prevent him from playing football is to be paid his full salary for certain periods of time. McPherson received that remedy but now wants more. He should be required to abide by the agreement of the parties as provided in the CBA.

It is without peradventure that the right of NFL players to recover lost income due to football related injuries from NFL teams is created and defined exclusively by the CBA. Paragraph 9 of the standardized NFL Player Contract[4] provides in relevant part:

> 9. INJURY. Unless this contract specifically provides otherwise, if Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary, and will continue to receive his yearly salary for so long, during the season of injury only and for no subsequent period covered by this contract, as Player is physically unable to perform the services required of him by this contract.

Thus, under the CBA, the parties agreed that if a player is injured practicing or playing football, he shall continue to be paid his full salary during the season in which was injured until he recovers from his injury, notwithstanding the fact that he is unable to play football. The CBA does not distinguish between a player who is injured by another player, by running into a goal post, by being hit by an object thrown from the stands or by colliding with a mascot, all of which occur "in the performance of [the player's] services" under the contract. Here, in accordance with the above provisions of the standardized NFL Player Contract, the Saints paid and McPherson accepted a total of $62,553.10 – every dollar to which he was entitled under the CBA – while he was recovering from the injuries he received in the Saints - Titans game. Loomis Affidavit at ¶ 5.

---

[4] The standardized NFL Player Contract is actually part of the CBA and is attached to the CBA as Appendix C. Article XIV, Section 1 of the CBA provides that the NFL Player Contract form attached as Appendix C to the CBA must be used for all player signings. Because the CBA incorporates the standardized NFL Player Contract, the agreements are considered together for purposes of preemption analysis. <u>Sherwin</u>, 752 F. Supp. at 1177-78.

1320879.1

Additionally, Article 17, Section 17.6 (C) of the NFL Constitution and Bylaws[5] requires that players placed on Injured Reserve continued to be compensated at their full salary.   Again, in accordance with the provisions of the NFL Constitution and Bylaws, the Saints paid McPherson the full salary due him under his NFL Player Contract while he was on Injured Reserve. See id. at ¶ 5. Moreover, Article X, Section 1 of the CBA provides that a player's contract may not be terminated while he is injured if such injury was incurred in the performance of work related duties, such as practicing or playing football.   In accordance with such provisions, the Saints allowed McPherson to fully recover from his injuries before his contract was terminated. Id. at ¶ 4.

At its core, McPherson's Complaint seeks to recover damages for injuries received in the performance of his duties, which his exclusive bargaining agent, the NFLPA, negotiated would be limited to his salary, which he received.  If McPherson believes that he is entitled to any other damages from the Titans or the New Orleans Saints or any other NFL team, he must pursue them pursuant to the grievance and arbitration dispute resolution process set forth in the CBA.

McPherson accepted without reservation the compensation and benefits due him under the CBA for the injuries that he received in the Saints - Titans game.  Yet, now McPherson seeks more compensation and more benefits through the judicial system.  That is not right and it is not fair.  As a matter of fact and law,

---

[5]   Article III, Section 1 of the CBA incorporates the NFL Constitution and Bylaws by reference and provides in relevant part, "the NFLPA and the Management Council waive all rights to bargain with one another concerning any subject covered or not covered in this Agreement, including the provisions of the NFL Constitution and Bylaws; . . . ."

McPherson cannot accept the CBA's benefits and then disclaim its obligations and the Court should not permit him to do so.

### 2. Resolution of McPherson's tort claim requires interpretation of multiple provisions of the CBA.

McPherson's resort to the judicial process requires the Court to interpret the CBA and determine, as a quick example, the following questions:

- Does McPherson's decision to file suit against the Titans violate the "no suit" provision of Article IV, Section 5?

- Does the Titans' purported "failure to properly supervise and train its employees and agents to perform [their] duties in a safe and reasonable manner" constitute non-compliance with the CBA in violation of Article IX, Section 1?

- Does McPherson's failure to file either a non-injury or injury grievance against the Titans pursuant to Article IX or Article X, respectively, bar his claim for damages for a football related injury against the Titans?

- Does the payment of any amount of money by an NFL club to an NFL player other than that to which the player is contractually entitled under his employment agreement (e.g., as "damages" in a tort lawsuit) violate Article XIV, Section 5(c)?

- Does a payment of damages to an NFL player for "loss of earnings and earning capacity" and "lost wages" violate paragraph 3 of the NFL Player Contract, which is incorporated into the CBA?

Additionally, and perhaps more importantly, the parties agreed in Articles IX and X of the CBA that NFL players would resolve their disputes against NFL teams through the grievance process and arbitration procedures. McPherson's claim against the Titans also requires the Court to parse the language of the CBA to determine what duty an NFL team owes to an NFL player on an opposing team

because there is no free-standing duty owed by an NFL team to a player on an opposing club during a football game. To find otherwise would create an avalanche of litigation by NFL players (and for that matter, by any professional athlete) against opposing NFL teams for injuries incurred in the course and scope of their professional duties. That is an absurd result and the Titans' research has not revealed any case in which a court has recognized such a cause of action. Indeed, in Hackbart v. Cincinnati Bengals, Inc., 601 F.2d 516 (10th Cir. 1979), the Tenth Circuit Court of Appeals recognized that "subjecting another to unreasonable risk of harm, the essence of negligence, is inherent in the game of football, for admittedly it is violent." Id. at 520; see also Gauvin v. Clark, 537 N.E.2d 94, 96 (Mass. 1989) (noting that the "courts are wary of imposing wide tort liability on sports participants, lest the law chill the vigor of athletic competition.").

McPherson's claim fails both requirements of the Sixth Circuit's preemption test. See Mattis, 355 F.3d at 906.

### C.   Brown v. National Football League does not Save McPherson's Claim from Preemption.

In sole support of his Motion to Remand, McPherson relies upon and quotes extensively from the Southern District of New York's opinion in Brown v. National Football League, 219 F. Supp. 2d 372 (S.D.N.Y. 2002), but ignores completely the line of cases in which courts have held professional football player's state law claims to be completely preempted by Section 301 of the LMRA.[6] While at first glance the

---

[6] See, e.g., Smith, 87 F.3d at 720-721; Sherwin, 752 F. Supp. at 1178; Rudnay 1983 U.S. Dist. LEXIS 12595 at *6-7.

<u>Brown</u> decision appears helpful to McPherson's argument, upon closer reflection it is not.

The plaintiff in <u>Brown</u> sued the NFL, not the team for which he was playing or the team he was playing against. That difference is critically important because the Preamble to the CBA specifically recognizes that the parties to it are the NFLPA and the NFLMC. Underwood Affidavit at ¶¶ 2-3 and Ex. 1 at 3. The NFL is <u>not</u> a party to the CBA. <u>Id.</u> Indeed, the Brown court focused on that fact, noting that the NFL's preemption claim was "dubious" because "the NFL is neither Brown's employer <u>nor a party to the CBA</u>." <u>Brown</u>, 219 F. Supp. 2d at 383. Of course a non-party to a collective bargaining agreement could not enforce the terms and conditions of that collective bargaining agreement against someone who was party to it.[7] A contrary result would defy common sense and black letter contract law. Here, the Titans seek to enforce the terms of the CBA to which both the Titans and McPherson, as well as all NFL teams and player/employees, are bound. That is markedly different from what the NFL tried to do in <u>Brown</u>.

Importantly, the <u>Brown</u> court recognized that "a CBA might well define the nature of the duty of care owed to employees, <u>or the remedies available to them for breaches of that duty; a union might well waive a right to sue in return for other concessions</u>, or bargain collectively over the standard of care required and the

---

[7] The same result, of course, obtains under McPherson's hypothetical scenario in which the Titans' mascot injures a patron, and his rhetorical question of whether that patron could sue in state court for the tortious acts. Assuming the patron did not waive his right to sue by some contractual agreement, of course the patron could file suit. The CBA would not be implicated in that hypothetical situation because the patron was not a party to it and would not have received – as McPherson did here – compensation pursuant to its terms and conditions. Absent resort to the judicial system, the patron, unlike McPherson here who could have filed a grievance and proceeded to arbitration, would have no other remedy to redress the tortious acts.

dangers or risks assumed by its members." Id. at 382-83. For whatever reason, however, the Brown court took that analysis no further. This Court can, should and indeed must in order to determine whether McPherson can pursue his tort claim against the Titans when he has received all the benefits for injuries incurred in the performance of his professional duties. The NFLPA and the NFLMA bargained at arms length for benefits and promises from one another, including a no-fault compensation system. McPherson has enjoyed the benefits of that system and should not be permitted to seek more benefits, outside that system, just because he thinks he should get more money than that to which his exclusive bargaining agent agreed.

## V. Conclusion

For the foregoing reasons, McPherson's Motion to Remand should be denied.


s/Mark W. Peters
Robert E. Boston, Tenn. BPR # 9744
Mark W. Peters, Tenn. BPR # 18422
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville City Center
Nashville, TN 37219
(615) 244-6380 (telephone)
(615) 244-6804 (facsimile)
bob.boston@wallerlaw.com
mark.peters@wallerlaw.com

Attorneys for Defendant

1320879.1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served electronically, by operation of the Court's electronic filing system, upon James R. Krenis, Hill-Boren PC, 191 Jefferson Avenue, Memphis, Tennessee 38103, on this the 31st day of January, 2007.

s/Mark W. Peters
Robert E. Boston, Tenn. BPR # 9744
Mark W. Peters, Tenn. BPR # 18422
WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville City Center
Nashville, TN 37219
(615) 244-6380 (telephone)
(615) 244-6804 (facsimile)
bob.boston@wallerlaw.com
mark.peters@wallerlaw.com

Attorneys for Defendant
