LEXSEE

**John C. Rudnay a/k/a Jack Rudnay, Plaintiff v. Kansas City Chiefs Football Club, Inc. et al., Defendants.**

**No. 83-0476-CV-W-6.**

**United States District Court for the Western District of Missouri, Western Division.**

**1983 U.S. Dist. LEXIS 12595; 100 Lab. Cas. (CCH) P10,936**

**October 19, 1983**

**COUNSEL:** [*1]

William R. Merryman, (Wickersham & Merryman), Kansas City, Missouri, for Plaintiff.

Duane J. Fox and William J. Burrell, (Burrell, Seigfried & Bingham), Kansas City, Missouri, for Defendants.

**OPINION BY:**

SACHS

**OPINION:**

SACHS, D.J.: The above-captioned case was originally filed in the Circuit Court of Jackson County, Missouri on March 10, 1983. Defendants' petition for removal to this Court was timely filed on April 29, 1983, alleging that jurisdiction existed in the Court under 28 U.S.C. § 1331(a), § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and § 303 of the National Labor Relations Act, 29 U.S.C. § 187, in that plaintiff's "Count I presents a purely federal question as to Plaintiff's rights under a collective bargaining agreement between an NFL Club, the Kansas City Chiefs, and a duly authorized labor union, the NFLPA, in an industry affecting commerce" and that "Counts II and III . . . involve the central issue of the rights and obligations under a collective bargaining agreement between an NFL Club, the Kansas City Chiefs, and the NLFPA in an industry affecting commerce. . . ." Now before the Court is plaintiff's motion to remand to the state court. Because the [*2] Court finds that a substantial federal question is presented by plaintiff's complaint, despite plaintiff's failure to mention § 301 of the Labor Management Relations Act in his complaint, the motion will be denied.

Plaintiff seeks to recover damages, both compensatory and punitive, for acts by defendants which plaintiff alleges constitute breach of contract and tortious interference with the contract rights of others. Plaintiff maintains that his claims arise solely out of a contract that is made under and governed by the laws of the State of Missouri.

Plaintiff has alleged the following facts in his Motion to Remand. At all times relevant to this cause of action, he was an employee of the defendant Kansas City Chiefs Football Club, Inc. ("Chiefs") by reason of an individual contract of employment with the Chiefs. Under this contract, the chiefs agreed to pay the plaintiff his yearly salary if the plaintiff was injured in the performance of his services under his contract with the Chiefs.

On September 12, 1982 the plaintiff, while in the performance of his services under the contract, sustained a severe and disabling injury. The Chiefs received immediate notice of the injury [*3] and on September 14, 1982 placed the plaintiff in an "injured reserved" status, thus becoming obligated to pay the plaintiff his salary in accordance with the terms of his individual contract of employment.

On September 22, 1982 the plaintiff reported to the

Dockets.Justia.com

Page 2

1983 U.S. Dist. LEXIS 12595, *3; 100 Lab. Cas. (CCH) P10,936

Chiefs' facilities for purposes of treatment and rehabilitation, but was denied access and sent away by the Chiefs on the basis that certain members of the National Football League Players' Association ("NFLPA") had engaged in a strike, thereby relieving the Chiefs of any and all contractual obligations to any of its employees regardless of status.

Plaintiff alleges that he is entitled to payment in accordance with the terms of his individual (as opposed to collective) contract with the Chiefs. Additionally, plaintiff alleges that the NFLPA exceeded the scope of its agency in its negotiations of the collective bargaining agreement entered into between the NFLPA and the NFL n1 on December 11, 1982, and that the NFL tortiously interfered with the plaintiff's individual contract of employment with the Chiefs by compelling the Chiefs not to honor the terms of its contract of employment with the plaintiff.

n1 James H. Schaaf, the general manager of the Chiefs, in his June 1, 1983 affidavit sharply distinguishes between the NFL and the NFL Management Council and their respective duties, responsibilities, and actions.

[*4]

The removal of actions to a federal court is governed by 28 U.S.C. § 1441. Subsections (a), (b), and (c) of that section provide:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant or the defendants, to the district court of the United State for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. . . .

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all

issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

Defendants contend that the action is removable on the basis of the [*5] court's federal question jurisdiction. Whether the court has federal question jurisdiction depends in turn upon whether adjudication of the action depends upon application of federal law. Gully v. First National Bank in Meridian, 299 U.S. 109 (1936); Grisbaum v. Amalgamated Meatcutters & Milwaukee Retail Meat Industry Trust Fund, 482 F. Supp. 1218, 1219 (E.D. Wis. 1980). As a general rule the presence of federal question must be found on the face of the state court complaint, Grisbaum, 482 F. Supp. at 1219, and a plaintiff has the prerogative of determining the theory of his action and, in the absence of fraud, may defeat removal to federal court by avoiding allegations which provide a basis for the assertion of federal jurisdiction. Sheeran v. General Electric Co., 593 F.2d 93, 96 (9th Cir.), cert. denied, 444 U.S. 868 (1979). Nevertheless, as held by the Sixth Circuit, "[t]he force of Federal preemption in this area of labor law cannot be avoided by failing to mention Section 301 in the complaint." Avco Corp. v. Aero Lodge No. 735, International Association of Machinists and Aerospace Workers, 376 F.2d 337, 340 (6th Cir. 1967), aff'd, 390 U.S. 557 (1968). Similarly, "the Court [*6] must carefully examine the complaint to determine if a federal claim is necessarily presented, even if the plaintiff has couched his pleadings exclusively in terms of state law." Drivers, Chauffeurs & Helpers Local Union No. 639 v. Seagram Sales Corp., 531 F. Supp. 364, 367 (D.D.C. 1981).

Plaintiff's rights and duties under his individual contract cannot be separated from those under the Collective Bargaining Agreement. Plaintiff is bound by the terms of the Collective Bargaining Agreement negotiated between the NFLPA and the NFL Management Council. Cincinnati Bengals, Inc. v. Thompson, 553 F. Supp. 1011, 1014 (S.D. Ohio 1983). See J.I. Case Co. v. NLRB, 321 U.S. 322, 334-35 (1944); Baker v. Amsted Industries, Inc., 656 F.2d 1245, 1249 (7th Cir. 1981). Thus, plaintiff's allegation in Count I against the Chiefs cannot ignore the effect of the Collective Bargaining Agreement. Nevertheless, as plaintiff correctly point out, jurisdiction under § 301 of the LMRA must be predicated upon a dispute between the NFLPA and the Chiefs, 29 U.S.C. § 185(a). But, because resolution of plaintiff's rights and duties under his individual contract necessarily requires a

Page 3

1983 U.S. Dist. LEXIS 12595, *6; 100 Lab. Cas. (CCH) P10,936

determination of his rights [*7] and duties under the Collective Bargaining Agreement, § 301 provides jurisdiction in a federal district court under the rule of Smith v. Evening News Association, [46 LC P17,962] 371 U.S. 195 (1962), wherein an employee was allowed to sue his employer directly for violation of a collective bargaining agreement.

Jurisdiction may also be found under Count II. Section 9(a) of the NLRA declares that a union designated by the majority of employees is an appropriate unit "shall be the exclusive representative of all employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 U.S.C. § 159(a). A much broader scope of agency would be hard to find. Therefore, plaintiff's allegation under Count II for exceeding the scope of agency and authority is best analyzed as one against the NFLPA for a violation of its duty of fair representation under § 301 of the LMRA. See Emmanuel v. Omaha Carpenters District Council, 535 F.2d 420, 423 (8th Cir. 1976). Plaintiff's actual allegation appears to be that the NFLPA in its negotiations neglected players in his position, thus, breaching the duty ""to [*8] serve the interests of all members without hostility or discrimination" both in the conduct of collective bargaining and in the enforcement of the resulting agreement." Emmanuel, 535 F.2d at 423 (quoting Vaca v. Sipes, 386 U.S. 171, 177 (1967)). See Lewis v. Shubert, 300 F. Supp. 174 (W.D. Mo. 1969).

The Chiefs also ask the Court to find jurisdiction under Count III because plaintiff "alleges that the NFL "caused, induced and compelled the defendant NFLPA" to exceed its authority and breach its duty to the Union members in the settlement of the 1982 players' strike." The Chiefs assert that this allegation is actually an unfair labor practice charge under 8(a) of the LMRA, 29 U.S.C. § 187. The Chiefs however, neither cite case law in support of this proposition, nor explain how § 8(a) of the LMRA applies.

While it is debatable whether this Court may assert jurisdiction over Count III under the doctrine of pendent-party jurisdiction, n2 it is unnecessary for the Court to resolve this Aldinger question. n3 The suit against the NFL, an admittedly unincorporated association, is in improper form, unless a federal question actually is involved. Rule 17(b) of the Federal Rules of Civil [*9] Procedure requires that the Capacity of

unincorporated associations to be sued in non-federal question cases be determined by state law. The Missouri Supreme Court recently has reaffirmed that an unincorporated association may only be sued as a class. See State ex rel Auto Club Inter-Insurance Exchange v. Gaertner, 636 S.W. 2d 68 (Mo. banc 1982). Furthermore, as the Chiefs apparently are not in the coercing class or at least have a divergent interest, they could not be a class representative. See Fed.R.Civ.P. 23.2. At least in its present posture Count III appears to be surplusage in this lawsuit, as it could not be validly processed. See generally 71 C.J.S. Pleading § 36. n4

n2 See Sheet Metal Workers Int'l Ass'n, AFL-CIO v. Seay, 696 F.2d 780, 782 (10th Cir. 1983) (Where an action involving a claim under a collective bargaining agreement is removed from state to federal court, federal jurisdiction can be exercised over pendent state law claims arising from the same nucleus of operative facts.); Nixon v. NLRB, 559 F. Supp. 1265, 1268-70 (W.D. Mo. 1983) (federal court would not exercise pendent jurisdiction over a non-federal claim against a union attached to a Federal Tort Claims Act claim against the NLRB because the two claims did not arise out of the same common nucleus of operative facts); Cable News Network, Inc. v. American Broadcasting Co., 528 F. Supp. 365, 367 (N.D. Ga. 1981) (pendent jurisdiction over new parties is proper where the collateral issues arise from the interpretation of collective bargaining agreements). But cf. Pedro v. Teamsters Local 490, 509 F. Supp. 83 (N.D. Cal. 1981) (no pendent jurisdiction for a legal malpractice claim attached to a claim under § 301 of the LMRA).

n3 Under the analysis required by the Supreme Court in Aldinger v. Howard, 427 U.S. 1, 16-17 (1976), this Court would have to examine the relevant statutory grant of jurisdiction (here § 303 of the LMRA) to determine if Congress intended to exclude a particular party over whom pendent jurisdiction is sought. See Chas. D. Bonanno Linen Service, Inc. v. McCarthy, 708 F.2d 1, 6-11 (1st Cir. 1983); Silver Motor Freight Terminal v. Teamsters Local Union No. 957, 537 F. Supp. 188, 194-95 (S.C. Ohio 1982) (an individual

Page 4

1983 U.S. Dist. LEXIS 12595, *9; 100 Lab. Cas. (CCH) P10,936

union member could not be sued for state law claims as a pendent party in a § 303 action).

n4 A point raised neither by the Chiefs, the NFLPA, nor the plaintiff that might also have been dispositive of Count III is the extent to which federal labor law preempts state law for tortious interference with the contract rights of others. See Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962); Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120, 647 F.2d 372 (3d Cir. 1981), cert. denied, 454 U.S. 1143 (1982). The Chiefs may well be right that the most to which Count III can amount is an unfair labor practice charge under § 8(a) of the LMRA. Such a charge would be within the jurisdiction of the NLRB. The Court, however, will express no opinion as to this matter at this time.

[*10]

Also pending before the Court is the defendants' motion to dismiss Counts I and III. Because of the Court's previous resolution with respect to Count III, the Court will only address the motion to dismiss Court I.

The principal legal dispute in Count I appears to be whether the NFLPA could legally bargain away a portion of the plaintiff's alleged vested right to payment during the strike. n5 Because the facts apparently are little in dispute, this may be a proper issue to decide by treating the motion to dismiss as a motion for summary judgment. See International Longshoremen's & Warehousemen's Union v. Kuntz, 334 F.2d 165, 168 (9th Cir. 1964).

n5 Another issue, which plaintiff may wish to abandon, is whether assuming validity of all agreements, there has been a breach of his individual contract. Such a claim, as will be shown, would require arbitration.

Plaintiff admits that seniority rights can be altered by collective bargaining agreements, but distinguishes seniority rights from a right to payment during a strike. Plaintiff reasons that seniority rights are not vested, but derive their scope and significance from bargaining agreements. This argument is not well [*11] taken: Article XXIII, the "Money Now" provision of the 1982 Collective Bargaining Agreement apparently superseded plaintiff's individual standard NFL Player Contract. See

Corcoran v. Allied Supermarkets, Inc., 498 F.2d 527, 530 (8th Cir. 1974). Nevertheless, plaintiff could assert a claim for breach of the duty of fair representation. The standard for this duty of fair representation, has primarily been defined in the processing of grievances. Under this standard,

the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

Vaca v. Sipes, 386 U.S. 171, 177 (166). However, the duties of good faith and honesty required of a union when negotiating a collective bargaining agreement do not mirror those required of a union when handling employee grievances. When negotiating a collective bargaining agreement, a union's conduct will be assessed under a much wider range of reasonableness than when it is handling employee grievances. See Ford [*12] Motor Co. v. Huffman, 345 U.S. 330, 338 (1953); Shultz v. Owens-Illinois Inc., 696 F.2d 505, 515 (7th Cir. 1982).

It would be inappropriate at this time to decide whether plaintiff could meet this burden as to the NFLPA. Therefore, it also is inappropriate for the Court to dismiss Count I because if the Court should subsequently find the 1982 Collective Bargaining Agreement ineffective as to the plaintiff, the chiefs would then also be liable. Defendants' reliance upon Bowen v. United States Postal Service, 103 S.Ct. 597 (1983), for the proposition that the NFLPA could conclusively waive plaintiff's rights as to the Chiefs is misplaced. Bowen simply stands for the proposition that it would be unfair for an employer to be liable for damages that were increased by a union's breach of its duty of fair representation, thus requiring apportionment of damages between the employer and the union.

As defendants note, however, the Court's resolution of the foregoing question does not end the problem. The defendants also claim that plaintiff's claim must be submitted to arbitration. Paragraph 20 of the plaintiff's individual standard NFL Player Contract provides:

Any dispute between [*13] Player and Club involving the interpretation or application of provision of this contract will be submitted final and binding arbitration in accordance with the procedure called for in

Page 5

1983 U.S. Dist. LEXIS 12595, *13; 100 Lab. Cas. (CCH) P10,936

any collective bargaining agreement in existence at the time the event giving rise to such dispute occurs. If no collective bargaining agreement is in existence at such time, the dispute will be submitted within a reasonable time to the League Commissioner for final and binding arbitration by him. . . .

Plaintiff submits that this provision is not binding upon him under the doctrine of Vaca v. Sipes, 386 U.S. 171 (1967), n6 wherein the Supreme Court held than an "employee should not be limited to the exclusive remedial procedures established by the contract . . . when the conduct of the employer amounts to repudiation of those contractual procedures." Id. at 185. Plaintiff, however, fails to state how the Chiefs' conduct amounted to a repudiation of the arbitral procedures of the contract.

> n6 The Court assumes that this is the case plaintiff intended to rely upon, not "Buaca v. Sypes."

Plaintiff also alleges that the arbitral provision did not comply with Missouri statutory law, since paragraph [*14] 20 of plaintiff's individual contract states that it is to be governed by Missouri law. Under § 435.460 RSMo (1982 Supp.) the following is required:

Each contract subject to the provisions of sections 435.350 to 435.470 shall include adjacent to, or above, the space provided for signatures a statement, in ten point capital letters, which read substantially as follows: "This Contract contains a binding arbitration provision which may be enforced by the parties."

Plaintiff's individual contract does not comply with this provision. The statute, however, does not state the effect of noncompliance with this provision. Moreover, plaintiff has not cited to the Court any cases construing this provision. The obvious intent of the statute was to ensure that parties in the position of plaintiff are aware of arbitral provisions, but plaintiff has not stated that he was unaware of the provision. Furthermore, the Court finds it hard to believe that a player in plaintiff's position would be unaware of such provision because of the presumption that a contract-signer knows the contents of the contract. See, e.g., Melton v. Ensley, 421 S.W.2d 44, 53 (Mo. App. 1967). Finally, since the plaintiff's [*15] individual standard NFL Player Contract is superseded by the 1982

Collective Bargaining Agreement, n7 and since federal law governs the enforceability of a collective bargaining agreement, see Textile Workers Union v. Lincoln Mills, 353 U.S. 448 (1957), it follows that federal law should govern the enforceability of the arbitral provision. In any event, the Missouri Supreme Court has held that Chapter 435 applies only to commercial arbitration, not labor arbitration. Grubb v. Leroy R. Wade & Son, Inc., 384 S.W.2d 528, 534 (Mo. 1964). Subsequent amendments to the statute indicate no change in this rule.

> n7 This supersession includes any differences between the arbitral provisions in the plaintiff's individual standard NFL Player Contract and the 1982 Collective Bargaining Agreement.

An issue addressed only by defendants is whether a collective bargaining agreement was in existence at the time the event giving rise to the dispute occurred, thus calling into play paragraph 20. In a case involving an identical standard NFL Player Contract, the District Court found that the 1982 Collective Bargaining Agreement was so in existence. Cincinnati Bengals, Inc. v. Thompson, 553 [*16] F. Supp. 1011, 1015 (S.D. Ohio 1983). This Court agrees. Accordingly, it is hereby

Ordered that plaintiff's motion to remand is Denied as to Counts I and II. Count III is Dismissed without prejudice. It is further

Ordered that resolution of Count I be Stayed pending arbitration, or the further Order of this Court. n8

> n8 Should plaintiff choose not to arbitrate, but rather to abandon any claim that the "Money Now" provision of the 1982 Collective Bargaining Agreement did not expressly waive his rights under his individual standard NFL Player Contract, the primary issues left for decision would be whether the NFLPA exceeded its bargaining authority or breached its duty of honesty and fair dealing to this plaintiff and whether the Chiefs would be collaterally liable. These issues would then be ripe for decision by this Court. Counsel should advise the Court when it is appropriate to lift the stay.