IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ADRIAN MCPHERSON, ) | |
| ) | |
| *Plaintiff,* ) | |
| v. ) | NO. 3:07-0002 |
| ) | JUDGE HAYNES |
| TENNESSEE FOOTBALL ) | |
| INCORPORATED, d/b/a TENNESSEE ) | |
| TITANS, ) | |
| ) | |
| *Defendant.* ) | |

### MEMORANDUM

Plaintiff, Adrian McPherson, a Florida citizen, filed this action originally in the Circuit Court of Davidson County, Tennessee against the Defendant, Tennessee Football, Inc., a corporation with its principal place of business in Nashville, Tennessee and doing business as the Tennessee Titans. Plaintiff seeks damages for personal injuries he sustained during the halftime of a preseason football game between the Tennessee Titans and the New Orleans Saints in Nashville. In sum, Plaintiff, a Saints player, alleges that he was injured when the Defendant's mascot drove his vehicle onto the playing field striking Plaintiff during the warm-up part of halftime activities of the game. Plaintiff asserts state law claims for negligence and negligent supervision.

The Defendant removed this action to this Court under 28 U.S.C. § 1441, asserting federal question jurisdiction and citing Section 301 of the Labor Management Relations Act ("LMRA"), 28 U.S.C. § 185(a). The Defendant is a member of the National Football League ("NFL") that has a collective bargaining agreement ("CBA") with the NFL Players Association ("NFLPA"), the players' union. The Defendant contends that because Plaintiff's claims necessarily involve the NFL's CBA, Plaintiff's state court action, in effect, presents a federal question as Plaintiff was a member of the NFLPA at the time of the incident. The Defendant also argues that the LMRA and

the CBA completely preempt Plaintiff's state law claims.

Before the Court is the Plaintiff's motion to remand this action to the state court (Docket Entry No. 7), contending, in essence, that under the federal well-pleaded complaint rule, Plaintiff can elect to pursue his independent state law claims in the state courts and the LMRA does not completely preempt his state law claims. In its response (Docket Entry No. 8), the Defendant reiterates that the NFL's CBA with the NFLPA must be consulted to resolve any controversy arising from Plaintiff's injuries and Plaintiff's state law claims are also completely preempted by the LMRA.

For the reasons set forth below, the Court concludes that as a matter of law, Plaintiff's state law claims are not completely preempted by the LMRA by the presence of a CBA. The Court first concludes that Plaintiff's state law claims arising from the Defendant's mascot alleged acts and omissions that injured Plaintiff, have an independent basis under state law. Second, the Court concludes that the Defendant has not demonstrated that the resolution of the Plaintiff's state law claims is controlled by any interpretation of the CBA nor substantially depends upon the NFL's CBA to prove the Defendant's negligence. Thus, this action should be remanded to the state court where the action was originally filed.

### A. Analysis of the Record

According to his state court complaint, the New Orleans Saints employed McPherson as a professional football player during the 2005 NFL Season and a portion of the 2006 NFL Season. (Docket Entry No. 1, Notice, Attachment thereto, Complaint at ¶ 5; Docket Entry No. 11, Loomis Affidavit at ¶¶ 2, 3). As a player for the Saints, McPherson participated in the August 12, 2006 preseason football game between the Saints and the Titans in Nashville. (Docket Entry No. 1,

Notice, Attachment thereto, Complaint at ¶ 7). Before the start of the second half, McPherson alleges that he was catching punts from the Saints' punter and that while doing so, T-Rac, the Titans' mascot, drove a golf cart in his area and struck and injured Plaintiff.

As pertinent on the remand issue, the Defendant presented proof that as a result of this incident, McPherson was placed on the Saints' injured reserve list, but continued to receive his full pay while he recuperated. (Docket Entry No.11, Loomis Affidavit at ¶¶ 3, 5). Plaintiff did not file a grievance under the CBA with the Saints on his injuries during this incident at the Saints - Titans game. Id. at ¶ 6. On October 11, 2006, the Saints placed McPherson on waivers. Id. at ¶ 4. As a result of that termination, Plaintiff's NFL player contract with the Saints was terminated. Id.

For this dispute, the Defendant cites several provisions of the NFL's CBA that the Defendant contends are pertinent to Plaintiff's claims. The Defendant first cites the CBA's preamble that refers to the CBA as the sole and exclusive agreement for disputes between the players and the NFL teams. (Docket Entry No 12-1, Underwood Affidavit, Attachment thereto at p. 3) Article III, Section 1 of the CBA incorporates the NFL Constitution and Bylaws by reference and provides, in relevant part: "... the NFLPA and the Management Council waive all rights to bargain with one another concerning any subject covered or not covered in this Agreement for the duration of this Agreement, including the provisions of the NFL Constitution and Bylaws; . . .". Id. at p. 10.

The Defendant also quotes Article IV, Section 2[1] of the CBA that "[t]he NFLPA agrees that

---

[1] The Court believes that the Defendant erroneously cites to Article IV, Section 5 as the "no suit" provision of the CBA. (Docket Entry No. 8, Defendant's Memorandum at p. 12). From the Court's review, the "no suit" provision is in Article IV, Section 2. Article IV does not contain a Section 5. (Docket Entry No 12-1, Underwood Affidavit, Attachment thereto at pp. 11-12)

3

neither it ... nor any member of its bargaining unit, will sue ... the NFL or any Club with respect to any claim <u>relating to any conduct permitted by this Agreement</u> ... or any term of this Agreement ...". Id. at p. 11 (emphasis added). The NFL's CBA, however, also includes a "reservation of rights" clause that preserves a NFL's player's ability to bring certain legal claims. <u>Id.</u> at pp. 11-12.

The CBA also describes a grievance procedure and final and binding arbitration processes for non-injury and injury disputes. The Defendant specifically notes Articles IX and Articles X as the exclusive dispute resolution processes for Plaintiff's injury claims.

> Article IX, Section 1. Definition: Any dispute (hereinafter referred to as a "grievance") arising after the execution of this Agreement and involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract, or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players, will be resolved exclusively in accordance with the procedure set forth in this Article, except wherever another method of disputes resolution is set forth elsewhere in this Agreement...
>
> * * *
>
> Section 8. ... The decision of the arbitrator will constitute full, final and complete disposition of the grievance, and will be binding upon the player(s) and Club(s) involved and the parties to this Agreement; provided, however, that the arbitrator will not have the jurisdiction or authority: (a) to add to, subtract from, or alter in any way the provisions of this Agreement or any other applicable document....
>
> * * *
>
> Article X, Section 1. Definition: An "injury grievance" is a claim or complaint that, at the time a player's NFL Player Contract was terminated by a Club, the player was physically unable to perform the services required of him by that contract because of an injury incurred in the performance of his services under that contract. All time limitations in this Article may be extended by mutual agreement of the parties.

<u>Id</u>. at pp. 22, 25 and 27.

The final sections of the CBA that are cited by the Defendant are Article XIII that establishes a "Joint Committee on Player Safety and Welfare" for any "subject related to player safety and

4

welfare " and Article XIV Section 5(c) that provides, in pertinent part: " No Club shall be or be obligated to pay any player or Player Affiliate (not including retired players) other than pursuant to the terms of a signed NFL Player Contract or a contract for non-football related services as described in Section 5(b) above. Nothing contained in the immediately proceeding sentence shall interfere with a Club's obligation to pay a player deferred compensation earned under a prior Player Contract." (Docket Entry No. 12-3 at pp. 37 and 42-43).

The Defendant also cites an injury claim provision in the Plaintiff's contract that is governed by the CBA. This injury claim clause provides: "Unless this contract specifically provides otherwise, if Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary, and will continue to receive his yearly salary for so long, during the season of injury only and for no subsequent period covered by this contract, as Player is physically unable to perform the services required of him by this contract because of such injury." (Docket Entry No.11, Loomis Affidavit, Exhibit 1 thereto at ¶ 9).

### B. Conclusions of Law

The removal statutes, 28 U.S.C. § 1441 et seq. are subject to strict construction, Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941) and are "to be construed strictly, narrowly and against removal." Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co. 5 F.3d 963, 968 (6th Cir. 1993). "All doubts as to the propriety of removal are resolved in favor of remand." Coyne v. American Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999). As this Court observed, removal statues "are to be strictly construed . . . in favor of remand." Nasco Inc. v. Norsworthy, 785 F.Supp.

5

707, 710 (M.D. Tenn. 1992) (Higgins, D.J.). "The policy promotes comity and the 'rightful independence of state governments.'" Id. (quoting Healy v. Ratta, 292 U.S. 263, 279 (1934)). On a removal petition, the court is usually limited to an analysis of the complaint and the removal petition. See 14C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3739 at p. 472 (3d ed. 2007).

The well-pleaded complaint rule, "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). Under the well-pleaded complaint rule, federal jurisdiction is based on whether a federal question is presented, as determined from the plaintiff's complaint. Id. "Even though state law creates [a party's] causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 13 (1983).

In Tisdale v. United Association of Journeymen and Apprentices of Plumbing and Pipefitting, 25 F.3d 1308 (1994), the Sixth Circuit restated the law that the presence of a LMRA preemption defense does not necessarily preclude a Plaintiff's state law claim.

> [S]ection 301 of the LMRA does *not* preempt every suit involving unionized employees or their unions or divest state courts of their normal jurisdiction. The Supreme Court's unanimous decisions disallowing preemption in Caterpillar and Lingle confirm this. Federal law has monopolized certain aspects of labor relations, but where a suit does not center on the terms of a labor contract (collective bargaining agreement, union constitution, or other) it is not preempted because it is not within the arena of labor relations which Congress has nationalized:
>
> Section 301 does not ... require that all "employment-related matters involving unionized employees" be resolved through collective bargaining and thus be governed by a federal common law created by § 301. The Court has stated that "not every dispute concerning employment, or tangentially

6

Case 3:07-cv-00002  Document 16  Filed 05/31/2007  Page 6 of 12

> involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law." Claims bearing no relationship to a collective bargaining agreement [or, now, union constitution] beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301.

Id. at 1310-11 (quoting Caterpillar, 482 U.S. at 396 n. 10 and Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) (emphasis added). In a word, under Tisdale, the mere existence of a CBA does not necessarily mean as a matter of law, that the LMRA completely preempts any state law claim. As discussed below, under the factual circumstances here, the LMRA does not completely exempt Plaintiff's state law claims.

Tisdale also establishes that a federal preemption defense does not necessarily trump the "well-pleaded complaint rule" so as to justify removal of a state court action.

> [T]he presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule-that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court. When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option. But a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.
>
> Thus, preemption and removal are related but distinct concepts. Even "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted ... does not establish that they are removable to federal court."

Tisdale, 25 F.3d at 1311 (quoting Caterpillar, 482 U.S. at 398, 399 (emphasis in original and added, in part).

In Stringer v. National Football League, 474 F. Supp. 2d 894 (S.D. Ohio 2007), the district

7

court summarized the relevant legal principles for complete preemption by the LMRA:

> The Sixth Circuit has adopted a two-step approach to determine whether a state-law tort claim is sufficiently "independent" to survive § 301 preemption. A court must "ascertain whether the right claimed by the plaintiff is created by the collective bargaining agreement or by state law." DeCoe v. General Motors Corp., 32 F.3d 212, 216 (6th Cir.1994). If the right is created by the collective bargaining agreement, the claim will be preempted by § 301. If not, then the court must "examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms." Id. ( citing Terwilliger v. Greyhound Lines, Inc., 882 F.2d 1033, 1037 (6th Cir.1989), cert. denied, 495 U.S. 946, 110 S.Ct. 2204, 109 L.Ed.2d 531 (1990)). If resolution of the state law claim is "substantially dependent" on an analysis of the terms of the collective bargaining agreement, or "inextricably intertwined" with it, the claim will be preempted by § 301. Allis-Chalmers, 471 U.S. at 220, 105 S.Ct. 1904. However, "neither a tangential relationship to the CBA, nor [a] defendant's assertion of the contract as an affirmative defense [can] turn an otherwise independent claim into a claim dependent on the labor contract." DeCoe, 32 F.3d at 216 ( citing Fox v. Parker Hannifin Corp., 914 F.2d 795, 800 (6th Cir.1990)). "When the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Livadas, 512 U.S. at 124, 114 S.Ct. 2068.

Id. at 900.

In Brown v. NFL, 219 F. Supp.2d 372 (S.D.N.Y.2002), the district court addressed the impact of the NFL's CBA upon an injured NFL player's state tort action against the NFL for a game official's alleged negligence in throwing a penalty flag during the game and causing injuries to the player's eye. On the issue of whether the Plaintiff's claim is independent of the CBA, Brown posed this standard: "To be independent of the CBA, a tort claim must allege a violation of a duty 'owed to every person in society,' as opposed to a duty owed only to employees covered by the collective bargaining agreement." Id. at 380 (quoting United Steel Workers of America, AFL-CIO-CLC v. Rawson, 495 U.S. 362, 371 (1990)). In Stringer, another action involving the NFL's CBA, the court stated the standard for complete preemption is "how the [duty at issue] came into being." Stringer, 474 F. Supp.2d at 908.

8

As to the first step of the inquiry, Plaintiff relies upon state law for his claims. Tennessee law imposes a duty upon owners and operators of a business premises to protect its customers from probable or foreseeable dangers. See generally McClung v. Delta Square, Ltd., 937 S.W.2d 891, 902 (Tenn.1996). This duty has been extended to supervision of athletic events. See DeMauro v. Tusculum College, Inc., 603 S.W.2d 115, 119-20 (Tenn. 1980). For such duties, the doctrine of respondent superior is applicable for acts or omissions of the owner's or operators' employees and agents. Washington v. The 822 Corp., 43 S.W.3d 491, 494 (Tenn. Ct. App. 2001). Here, the Defendant does not cite any provision of the CBA concerning its mascots or field safety for half-time activities as establishing any legal duty owed by its agents to players. Moreover, the injury clause of the CBA covers injuries that affect the player's ability to perform under his contract with his NFL team. Plaintiff is not a player with the Titans. For removal purposes, the CBA's injury clause does not appear to apply to Plaintiff's negligence claims, as a Saints player against the Titans' mascot for the alleged acts and omissions. Thus, the Court concludes that Plaintiff's state law claims have an independent legal basis.

Other courts have found that the NFL's CBA does not completely preempt similar state law claims for purposes of removal. Brown involved an NFL player who filed a state court action for injuries that he suffered by a referee's throwing of a flag during the game. Brown analyzed some of the cited portions of the CBA relied upon by the Defendant here and concluded that these provisions did not create the legal duty that is the basis for that plaintiff's state law claims. As to the "no suit", grievance and arbitration provisions of the CBA, the Brown quoted the "no suit" provision and then analyzed these provisions of the CBA:

> The NFLPA agrees that neither it not any of its members .. will sue ... the
> NFL ... with respect to any claim relating to any conduct permitted by this

9

Case 3:07-cv-00002    Document 16    Filed 05/31/2007    Page 9 of 12

Agreement [or] the Settlement Agreement [or] relating to the presently existing provisions of the Constitution and Bylaws of the NFL as they are currently operative and administered....

Plaintiffs argue, with the *amicus* support of the NFLPA, that this provision (as is suggested by the reference to the Settlement Agreement, and by a list-elided in the quotation above-of specific practices included in the no suit clause) is only intended to preclude antitrust suits concerning such practices as the college draft, free agency rules, and the salary cap.

The Court need not go so far to resolve this issue, however. Giving the no-suit clause the broadest literal sweep of the language quoted above, we can assume arguendo that the clause is intended to prohibit *any* suit by a player against the NFL for *any* conduct "permitted by [the CBA]," or for *any* suit relating to the "Constitution and Bylaws of the NFL." As already discussed, nothing in the CBA remotely purports to address the use of penalty flags, let alone to provide that negligently throwing penalty flags is conduct "permitted by [the CBA]." As demonstrated above, while the issues in this case could involve the NFL Rules, which include a provision relating to the use of penalty flags, or the various Officials' Manuals, nothing in the suit turns on the interpretation or enforcement of, or in any way relates to, the Constitution and Bylaws, which relate to the organization of the league and not to the rules of play. Thus, by its own terms, the no-suit provision has nothing to do with this lawsuit, and could not serve as a basis for removal of the suit to federal court.

The arbitration clause cited by the NFL provides no greater help to its position. The CBA does not contain a single all-encompassing arbitration provision, but rather several different arbitration provisions relating to different types of grievances. The arbitration clause relied on by the NFL is Article IX, entitled "Non-Injury Grievance."[FN7] But this provision applies only to grievances "involving the interpretation of, application of, or compliance with, any provision of this Agreement, the NFL Player Contract,[FN8] or any applicable provision of the NFL Constitution and Bylaws pertaining to terms and conditions of employment of NFL players." The cited arbitration clause, thus, only applies to disputes growing out of the CBA itself, the NFL Player Contract, or the Constitution and Bylaws. It does not purport to require arbitration of what would otherwise be tort actions brought by players against the NFL for the carelessness of its employees.

> FN7 One might wonder how this claim of negligent injury could be covered by an arbitration provision dealing with "Non-Injury" grievances. However, an "Injury Grievance" is a specific kind of claim, which is defined and referred to a different arbitration mechanism in Article X of the CBA. The NFL concedes that Plaintiffs' claim is not an "injury grievance" within the meaning of

this provision.

> FN8 The "NFL Player Contract" is the contract of employment between a player and an individual football team. Such contracts are defined and provided for in the CBA. As specified by Article XIV § 1 of the CBA, the NFL Player Contract form is used for all player signings and cannot be amended without the approval of the NFL Management Council and the NFLPA.

> However broad their coverage with respect to disputes arising under the CBA-a matter this Court has no occasion to address-neither the no-suit clause nor the "non-injury grievance" arbitration provision purports to have any application to disputes between players and the NFL other than claims for breach of the CBA and the provisions of the NFL Constitution and Bylaws specifically incorporated therein. The Court thus need not address whether a clause that did prohibit ordinary tort suits would provide federal jurisdiction under § 301. <u>For purposes of this case, those clauses simply refer us back to the same inquiry with which we began: whether the Plaintiffs' suit is a cleverly-pleaded suit to enforce the CBA, or rests on state law duties to the general public that exist independently of the CBA. Since the action will not require interpretation of the CBA, but will instead implicate only ordinary concepts of negligence and assumption of risk, referring at most to the playing rules of NFL football and the proper conduct of referees-none of which are addressed in the CBA-"the purposes behind § 301 will in no way be thwarted by allowing Plaintiffs to go forward with their state law claims in state court." Foy, 127 F.3d at 234.</u>

219 F. Supp.2d at 388-389 (emphasis added) (internal citations omitted).

In <u>Stringer</u>, a player's widow asserted various state law negligence claims against the NFL that cited the CBA as preempting those state law claims. In <u>Stringer</u>, the court focused on whether the CBA set forth the duties on the particular risk giving rise to the Plaintiff's state law claims. 474 F. Supp. 2d at 904-07. As to Article XIII, the <u>Stringer</u> court stated, "[T]he CBA imposes no independent duty on the NFL to consider health risks arising from adverse playing conditions." <u>Id.</u> at 906. This provision was found to impose specific duties on NFL clubs and their players "related to their [players'] medical care." <u>Id.</u>

Based upon the factual circumstances of this action, the Court concludes that <u>Brown</u> is

11

highly persuasive authority on the asserted preemptive effect of these provisions of the CBA and the removal issues here. Thus, if an NFL player's state court action for injuries due to the alleged negligence of a NFL official on the field during a game is not completely preempted and removable, then the Plaintiff's state tort action based upon the alleged negligence of the Defendant's mascot on the Defendant's premises during halftime, is an independent state law action and is not completely preempted nor removable. Whether the Defendant's preemption defense ultimately defeats Plaintiff's claim is an issue for the state courts.

The Defendant cites a number of federal decisions on preemption of NFL players' state law claims: Smith v. Houston Oilers, Inc., 87 F.3d 717 (5th Cir.1996); Sherwin v. Indianapolis Colts, Inc., 752 F. Supp. 1172 (N.D.N.Y.1990); and Rudnay v. Kansas City Chiefs Football Club, 1983 U.S. Dist. LEXIS 12595, *6-7 (W.D.Mo. Oct. 19, 1984). Those decisions, however, involve players' claims against their teams and/or team personnel or contract with the individual player's team. Plaintiff is not a member of the Titans, but another NFL team. For removal purposes, the CBA's injury clause does not appear to apply to Plaintiff's negligence claims, as a Saints player against the Titans' mascot for the alleged acts and omissions. This Court deems those decisions to be factually inapposite.

For the above stated reasons, the Plaintiff's motion to remand should be granted.

An appropriate Order is filed herewith.

Entered ths the 31 day of May, 2007.

William J. Haynes, Jr.
United States District Judge